# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FEDERATED ADMINISTRATIVE SERVICES and FEDERATED HERMES, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>ENDURANCE AMERICAN INSURANCE COMPANY and CONTINENTAL CASUALTY COMPANY,<br><br>Defendants. | C.A. No. 2:23-cv-01239 |

**ENDURANCE AMERICAN INSURANCE COMPANY'S AND CONTINENTAL CASUALTY COMPANY'S JOINT SUMMARY JUDGMENT STATEMENT**

HANGLEY ARONCHICK
SEGAL PUDLIN & SCHILLER

Ronald P. Schiller (Pa. 41357)
Michael R. Carlson (*admitted pro hac vice*)
Lily K. Huffman (*admitted pro hac vice*)
Christopher J. Mauro (*admitted pro hac vice*)

Under this Court's Initial Scheduling Order (ECF No. 40), Defendant Endurance American Insurance Company ("Endurance") and Continental Casualty Company submit this "Summary Judgment Statement" to notify the Court of their intention to move for summary judgment.[1]

**1.  The settlement payments at issue do not constitute "Loss" under the policy.**

The underlying settlement agreements for Plaintiffs' failure to register shares with the Securities and Exchange Commission arise out of two purported "Claims" under the Endurance policy: the Tender Fund's demand to Plaintiffs, which was never expressly resolved, and the shareholders' purported demands to the Tender Fund. Plaintiffs argue that those purported claims trigger the policy's Professional Liability Coverage Part, which provides insurance for certain "**Loss** resulting from … **Claims**."[2]

"**Loss**" is defined as "the total amount which the **Insureds** become legally obligated to pay on account of each and every **Claim** … made against them for **Wrongful Acts** for which coverage applies[.]" Prof. Liab. Cov. Part § II.D. **Loss** does not include "any amount for which the **Insured** is not financially liable or which is without legal recourse to an **Insured**." *Id.* at § II.D.1. In other words, the Endurance policy only covers valid and enforceable liabilities that the "Insured" is "legally obligated to pay," including covered liabilities under the securities laws, but not hypothetical obligations or amounts it might voluntarily agree to pay for purely business reasons.

Plaintiffs purported to settle with the shareholders to avoid a possible rescission remedy against the Tender Fund under Section 12(a)(1) of the Securities Act. Section 12(a)(1) allows "no choice of remedy," meaning that "[i]f plaintiff owns the stock, he is entitled to rescission but not damages," but "[i]f plaintiff no longer owns the stock, he is entitled to damages but not

---

[1] Continental joins this Summary Judgment Statement as to Section 1. Since Plaintiffs have not asserted bad faith claims against Continental, Continental does not join Section 2.
[2] Notably, the shareholders only asserted their purported Claims *after* the Tender Fund had offered to pay them the rescission remedy under Section 12(a) of the Securities Act.

rescission."[3] After the failure to register shares, Federated Administrative Services ("FAS") agreed to pay the shareholders amounts based on interest accrued for a hypothetical rescission remedy even though they had elected to keep the securities. But the Tender Fund's obligation to the shareholders under Section 12(a)(1) of the Securities Act existed only insofar as the shareholders decided to return their shares in return for the original consideration, which they chose not to do (because they were happy with the Tender Fund's performance and had suffered no economic harm). But even if the shareholders had elected the rescission remedy, a significant portion of any liability would have been barred under the applicable statute of limitations, which runs from one year of the date of the failure to register.

And even if the shareholders had elected the rescission remedy, the definition of "Loss" expressly excludes "matters uninsurable under the law pursuant to which th[e] Policy is construed[.]" Prof. Liab. Cov. Part § II.D.3. The rescission remedy—whereby the Tender Fund would have disgorged monies that it had improperly received from the shareholders in return for the securities—would not have been insurable as a matter of public policy. Indeed, the Tender Fund never demanded Plaintiffs indemnify it for the consideration amount itself—i.e., the amount it would pay the shareholders to return the shares. Because those restitution payments would have been uninsurable, the interest accrued on that otherwise uninsurable loss (i.e., what FAS ultimately paid to the shareholders in the settlements), is likewise uninsurable under Pennsylvania law.

**2.   Plaintiffs have no viable claim for statutory bad faith or breach of the implied covenant of good faith and fair dealing.**

Pennsylvania law imposes an exacting standard on insureds attempting to proceed past summary judgment to a jury on a bad faith claim. More than "mere negligence or bad judgment," a finding of bad faith "**requires evidence so clear, direct, weighty and convincing as to enable**

---

[3] *Wigand v. Flo-Tek, Inc.*, 609 F.2d 1028, 1035 (2d Cir. 1979).

**a clear conviction, without hesitation, about whether or not the defendants acted in bad faith**."[4] Here, Plaintiffs cannot establish by clear and convincing evidence that Endurance's coverage position was unreasonable, let alone that it knew of or recklessly disregarded the supposed unreasonableness of its position. Likely recognizing that there is no basis to assert that Endurance's "denial" was unreasonable or reckless under the circumstances, Plaintiffs have sought to manufacture a bad faith claim based upon Endurance's claims handling conduct, which they characterize as serving a strategy of delay. But the clear and convincing standard applies to claims for alleged bad faith claims handling as well. Plaintiffs cannot meet that exacting standard here either because there was no unreasonable delay.

Plaintiffs' breach of the duty of good faith and fair dealing claim fails as well. This Court permitted that count to move past the pleadings stage, in part, because it found Plaintiffs had alleged extra-contractual damages in the form of statutory interest that had accumulated on amounts allegedly owed to the shareholders due to Endurance's purported "delay." But discovery has established that Plaintiffs needed both the shareholders' and SEC's approval to enter into the settlement agreements, and once they obtained those approvals, the agreements were signed in late May 2023. In the meantime, Endurance had informed Plaintiffs it would not assert lack of consent as a defense to coverage. In other words, the undisputed evidence establishes that Endurance provided its waiver of the consent defense ***before*** approvals from the underlying claimants were obtained and Plaintiffs could even do the deal they ultimately struck. There can be no claim for delay under these facts, let alone one so unreasonably as to breach the covenant of good faith and fair dealing under Pennsylvania law.

---

[4] *NVR, Inc. v. Motorists Mut. Ins. Co.*, 371 F. Supp. 3d 233, 255 (W.D. Pa. 2019) (citing *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 517 (3d Cir. 2012) (emphasis added)).

Dated: April 23, 2025         Respectfully submitted,

HANGLEY ARONCHICK
SEGAL PUDLIN & SCHILLER

By:   */s/ Ronald P. Schiller*
        Ronald P. Schiller (Pa. 41357)
        Michael R. Carlson (*admitted pro hac vice*)
        Lily K. Huffman (*admitted pro hac vice*)
        Christopher J. Mauro (*admitted pro hac vice*)
One Logan Square, 27th Floor
Philadelphia, PA 19103
(215) 568-6200
rschiller@hangley.com
mcarlson@hangley.com
lhuffman@hangley.com
cmauro@hangley.com

*Attorneys for Defendant*
*Endurance American Insurance Company*

4

## **CERTIFICATE OF SERVICE**

I, Ronald P. Schiller, hereby certify that on April 23, 2025, a copy of the foregoing Joint Summary Judgment Statement was served via electronic filing notice through the ECF system upon all counsel of record.

*/s/ Ronald P. Schiller*
Ronald P. Schiller