**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA.**

| | | |
|---|---|---|
| FEDERATED ADMINISTRATIVE SERVICES and FEDERATED HERMES, INC., | : : : : | C.A. No. 2:23-cv-01239-WSS |
| Plaintiffs, | : : | |
| v. | : : | |
| ENDURANCE AMERICAN INSURANCE COMPANY and CONTINENTAL CASUALTY COMPANY, | : : : : | |
| Defendants. | : : | |

**ENDURANCE AMERICAN INSURANCE COMPANY'S
CONCISE STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.B.1, and in support of its Motion for Summary Judgment, Endurance American Insurance Company hereby submits this Concise Statement of Undisputed Material Facts.

**I.        The Insurance Policies**

1.        Endurance American Insurance Company ("Endurance") issued a Manuscript Primary Professional and Management Liability Insurance Policy, No. FIP10007848907, to Federated Hermes, Inc. ("Federated Hermes") for the October 1, 2022 to October 1, 2023 policy period (the "Endurance Policy"). Ex. 1, Endurance Policy, Declarations.

2.        The Endurance Policy provides $10 million limits and sits above various retentions, including a $2.5 million retention for each **Claim**[1] under the professional liability coverage part. *Id.* Declarations, Item 3 and 4.

---

[1] Bold terms are defined in the Endurance Policy.

3.      In addition, the Endurance Policy provides that if "a **Loss** is subject to more than one Retention, the maximum aggregate Retention applicable to such **Loss** shall be the largest of such Retentions." *Id.*, General Terms and Conditions, § I.B.

4.      Continental Casualty Company ("Continental") also issued an Excess Liability Insurance Policy to Federated Hermes, No. 596617901, for the same policy period (October 1, 2022 to October 1, 2023) (the "Continental Excess Policy"). *See* Exhibit A to the Motion of Defendant Continental Casualty Company for Summary Judgment, which is being filed by Continental contemporaneously herewith; Ex. 2, Continental Excess Policy, Declarations.

5.      The Continental Excess Policy is specifically excess over the Endurance Policy, and it provides "follow-form" coverage with respect to the Endurance Policy (*i.e.,* in accordance with the terms and conditions of the followed Endurance Policy), except as otherwise provided in the Continental Excess Policy, with a limit of liability of $10 million excess of $10 million.  *See* Exhibit A to Continental Motion, Continental Excess Policy, §I.

6.      The Management Liability Coverage Part of the Endurance Policy provides that

> The Insurer shall pay on behalf of the **Company** [other than a **Fund**] all **Loss** which it becomes legally obligated to pay on account of any **Securities Claim** first made against it during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** of any **Insured Person** or the **Company** [other than a **Fund**] taking place before or during the **Policy Period.**

Ex. 1, Management Liability Coverage Part, §I(C).

7.      The Professional Liability Coverage Part of the Endurance Policy provides that

> A.      If during the **Policy Period** or the Extended Reported Period, if exercised, any **Claim** is made against the **Insured** for **Wrongful Acts** committed or alleged to have been committed by the **Insured** or by persons for whose **Wrongful Acts** the **Insured** is or is alleged to be legally responsible (including **Employees** acting within the

scope of their employment) the Insurer agrees to pay on its behalf **Loss** resulting from such **Claim**.

B.    Solely with respect to any **Wrongful Act** reported in accordance with Subsection V.B. NOTICE OF POTENTIAL CLAIM of the General Terms and Conditions which may subsequently give rise to a **Claim** for which coverage may be provided under this Coverage Part, the Insurer may pay costs and expenses incurred by the **Insured** with the Insurer's written consent to mitigate loss or otherwise compensate any client of the **Insured** prior to any **Claim** being made in connection therewith.

*Id.*, Professional Liability Coverage Part, §I.

8.    **Insured** is defined in the Professional Liability Coverage Part in relevant part to include the **Company**, which is defined in the General Terms and Conditions to include the **Named Insured** and any **Subsidiary.** *Id.*, General Terms and Conditions, §§ IV(B) and IV(I).

9.    **Claim** is defined to mean, in relevant part, "a written demand by or on behalf of a claimant for monetary or non-monetary damages, injunctive relief, or other relief, once such demand is received by an **Insured**." *Id.*, Professional Liability Coverage Part, § II(A)(1).

10.    The Professional Liability Coverage Part defines **Wrongful Act** to mean "any actual or alleged act, error, omission, misstatement, misleading statement, neglect, or breach of duty actually or allegedly committed or attempted by any **Insured,** or by any person or entity for whose actual or alleged **Wrongful Act** the **Insureds** are alleged to be legally responsible in the provision or of failure to perform **Professional Services**." *Id.,* Professional Liability Coverage Part § II(F).

11.    **Loss** means "the total amount which an **Insured** becomes legally obligated to pay on account of each and every **Claim**, . . . made against them for **Wrongful Acts** for which coverage applies, including, but not limited to, damages, punitive damages, exemplary damages, the multiple portion of any multiplied damage award, judgments, any award of pre-judgment and post judgment interest, settlements, and **Defense Costs**, **Loss** shall also include any plaintiff's attorneys

and experts fees and any other plaintiff's costs or expenses awarded against or otherwise payable by the **Insured**, or payable from funds that the **Insured** has paid into escrow, pursuant to a judgment or settlement. . ." but "does not include. . . matters uninsurable under the law pursuant to which this Policy is construed." *Id.* Professional Liability Coverage Part § II(D) and (N).

12.    **Professional Services** is defined in the Professional Liability Coverage Part to include:

> 1.    the provision of computer and internet services, administrative services, and publications prepared or written by any **Insured**, provided such services are performed in connection with the **Insured Entity's** financial or investment operations; services include by way of illustration and not limitation: accounting, compliance, internal audit, recordkeeping, and other administrative services concerning or incidental to any of the foregoing…

*Id.*, § II(E).

13.    Both the Management Liability and Professional Liability coverage parts define **Claim** to mean, in relevant part, "a written demand by or on behalf of a claimant for monetary or non-monetary damages, injunctive relief, or other relief…" *Id.,* Management Liability Coverage Part § II(E). and *Id.,* Professional Liability Coverage Part § II(A).

14.    Further, the Management Liability and Professional Liability coverage parts also provide, that **Loss**, other than **Defense Costs**, does not include: "any amount for which the **Insured** is not financially liable, or which is without legal recourse to an **Insured**; . . . ." *Id.,* Management Liability Coverage Part § II(N) and *Id.,* Professional Liability Coverage Part § II(D).

15.    The Endurance Policy is not a "duty to defend" policy. Instead, it provides that "[i]t shall be the duty of the **Insureds** and not the duty of the Insurer to defend **Claims** against the **Insureds**…" *Id.*, General Terms and Conditions, § II.

16.    Reed Smith helped negotiate the Endurance Policy on behalf of Federated. Ex. 50.

## II.     FAS Fails to Register Shares

### A.     Federated Entities

17.     FAS is a Federated Hermes' wholly-owned subsidiary and provides various administrative services to the Tender Fund, including registration of shares under the Securities Act of 1933, under the terms of an administrative services contract.  Ex. 3, Complaint, ECF Doc. No. 1, ¶ 4; Ex. 4, No. 1; Ex. 15 at ENDURANCE003467-8.

18.     The Tender Fund is a Federated Hermes investment company. Ex. 17 at ENDURANCE003583-3634.

19.     The Tender Fund started operations on December 7, 2016 as a continuously offered, non-diversified, closed-end management investment company. Ex. 3, Complaint, ECF Doc. No. 1, ¶ 57; Ex. 17 at ENDURANCE003588.

20.     Closed-end funds, like the Tender Fund, are a unique asset class not traded on any exchange and are considered illiquid. Ex. 17 at ENDURANCE003590-3591.

21.     Because the Tender Fund is a closed-end fund, its shareholders did not have the right to require the Tender Fund to repurchase any or all of their shares. *Id.*  However, the Tender Fund agreed to provide a limited degree of liquidity to its shareholders by conducting repurchase offers generally quarterly. *Id*.

### B.     Administrative Services Agreement

22.     FAS and the Tender Fund entered into an Agreement for Administrative Services ("Administrative Agreement") wherein FAS agreed to provide administrative services to the Tender Fund, including registration of shares under the Securities Act of 1933 ("1933 Act"). Ex. 3, ECF Doc. No. 1 ¶ 60; Ex. 12.

23.     Specifically, Article 2(B) of the Administrative Agreement requires that FAS



*Id.* at FHI00000078.

24.    Article 6(A) of the Administrative Agreement provides that:

*Id.* at FHI00000083.

25.    Also, the Administrative Agreement states that ███████████████

████████████████████████████████████████████████

████████████████████████████████████ *Id.*, Article 6(B)

at FHI00000083.

**C.    Failure to Register Shares**

26.    ██████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████ Ex. 3, Complaint, ECF Doc. No. 1, ¶ 61; Ex. 4, No. 9.; Ex. 7, Tr. of Dep. of S. Van Meter at 29:4-11; Ex. 15; Ex. 31 at ENDURANCE003571-3572.

27.    FAS failed to register certain securities for the Tender Fund between April 30, 2021 and February 28, 2023. Ex. 3, Complaint, ECF Doc. No. 1, ¶ 4; Ex. 4, No. 9; Ex. 17 at ENDURANCE 0003576; Ex. 29 at ENDURANCE000009.

28.    At that time, the Tender Fund had four shareholders: Michigan Catastrophic Claims Association ("MCCA"), Auto-Owners Insurance/Auto-Owners Life Insurance Company ("Auto-Owners"), Energy Insurance Mutual Limited ("Energy") and Federated Investment Management Company. Ex. 31 at ENDURANCE0003567.

29.    Because all of Federated Investment Management Company's shares were purchased before April 30, 2021, the administrative error did not affect it. *Id.* According to Federated, only the following shareholders were affected by the Administrative Error: MCCA, Auto-Owners and Energy (collectively "Affected Shareholders"). *Id.*

30.    Between ██████████████████████████ shares of the Tender Fund that were issued to the Affected Shareholders were not properly registered ("Covered Shares"). Ex. 4, No. 9; Ex. 31 at ENDURANCE003807-3808.

31.    Specifically, the Tender Fund issued the following Covered Shares to the Affected Shareholders on the following dates:



32. ██████████████████████████████████████████████████
████████████████████████████████████████. Ex. 14 at FHI00007668.

33. ██████████████████████████████████████. Ex. 13 at FHI00007222.

34. ████████████████████████████████████████
███████████████████ *Id.*

## III.    Federated Provides Notice to Endurance of the Administrative Error

35.    In a March 31, 2023 letter, Federated's insurance coverage counsel, Reed Smith, purported to provide Endurance with a "Notice of Circumstance" regarding FAS's Administrative Error. Ex. 15.

36. ████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████

37. ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████

38.     By April 6, 2023, Endurance acknowledged the Notice of Circumstance, assigned a claims adjuster, Lisa Jacobson, who proposed an initial telephone discussion with the broker, the insureds, and Reed Smith. Ex. 16.

39. ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████ Ex. 19; Ex. 20.

40. ████████████████████████████████████████

████████████████████████████████████████████

Ex. 20.

41.    In the meantime, Reed Smith demanded that Endurance agree to pay what it characterized as "Costs of Correction Coverage" under the Professional Liability Coverage Part, Section I(B). *Id.*

42.    As Federated correctly acknowledged in its April 10, 2023 letter, Agreement I.B of the Endurance Policy's Professional Liability Coverage Part provides that "[s]olely with respect to any Wrongful Act reported in accordance with Subsection V.B. NOTICE OF POTENTIAL CLAIM of the General Terms and Conditions which may subsequently give rise to a Claim for which coverage may be provided under this Coverage Part, the Insurer *may* pay costs and expenses incurred by the Insured with the Insurer's written consent to mitigate loss or otherwise compensate any client of the Insured *prior to any Claim* being made in connection therewith." Ex. 22 (emphasis added).

43.    ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████

44.    ███████████████████████████████████████████
████████████████████████████████████

## IV.    The Rescission and Alternative Offers

45.    The same day that Reed Smith demanded "Costs of Correction" coverage, FAS, on behalf of the Tender Fund, filed a Form N-2 Registration Statement with the SEC. Ex. 18, The public registration statement included the following correspondence directed to shareholders offering to buy back shares:

Dear ___ Shareholder:

Thank you for investment in the Federated Hermes Project and Trade Finance Tender Fund (the "Fund"). We are sending you these materials because you were offered and purchased shares of common stock of the Fund at some point during the period from April 30, 2021 through February 28, 2023 ("Covered Period"). During this period, due to an administrative oversight, Fund shares offered and sold were not properly registered under the Securities Act of 1933…**Therefore, the Fund is offering to buy back the shares you purchased during the Covered Period**… This offer is called a "Rescission Offer."

Ex. 18 at ENDURANCE003576 (emphasis added).

46.     The registration statement further stated that the shareholder could "accept or reject" the Rescission Offer and that, if it accepted the offer, it would receive an amount equal to the amount it paid for the shares, plus simple interest, less all cash distributions it had received:

You can accept or reject the Rescission Offer as described in the attached Rescission Offer. **If you accept the Rescission Offer, the Fund will repurchase your Covered Shares** at a price determined as of the Expiration Date (as defined below) ("Rescission Price") equal to the amount you paid for such Covered Shares, plus simple interest (i.e., not compounded), less all cash distributions you have received in respect of those shares, if any. … **If you wish to keep your Covered Shares, you do not need to take any action**, although you can notify the Fund of your rejection upon making your decision in advance of the Expiration Date if you desire as described in the Rescission Offer. …

*Id*.

47.     The Rescission Offer acknowledged, however, that "the statute of limitations for enforcement of federal statutory rescission rights by a statutory holder is one year commencing on the date of the sale of the security sold in violation of the federal registration requirements..." *Id.* at ENDURANCE003578.

48.     ███████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████

49. ████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████

50. ████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████

51. ████████████████████████████████████████████
███████████████████████████

52. ████████████████████████████████████████████
████████████████████████████████████████████████████
██████████

53. ████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████

54.    Indeed, the Affected Shareholders wanted to stay invested in the Tender Fund, recognizing that the Administrative Error was simply "an administrative error" and that "people make mistakes" and, as a result, they "weren't particularly concerned" that the error would negatively affect the Tender Fund's performance. Ex. 9, Tr. of Dep. of S. Skornia at 17:13-22; Ex. 10, Tr. of Dep. of S. Kane at 20:25-21:12; Ex. 11, Tr. of Dep. of M. Lennox at 46:21-25.

55.    Further, none of the Affected Shareholders were economically harmed by the Administrative Error:

> Q.    And did EIM experience any economic harm as a result of the failure to register?
> A.    Not to my knowledge.

Ex. 9, Tr. of Dep. of S. Skornia at 22:18-20.

> Q.    Was MCCA financially harmed by the registration error?
> A.    No.
> Q.    Did it suffer any economic loss as a result of the registration error?
> A.    Not that I'm aware of.

Ex. 10, Tr. of Dep. of S. Kane at 39:5-10.

> Q.    But did Auto-Owners suffer any financial harm as a result of the failure to register shares?
> A.    We did not.

Ex. 11, Tr. of Dep. of M. Lennox at 52:20-23.

56.    ████████████████████████████████

██████████████████████████████████████████

57. ███████████████████████████████████████

███████████████████████████████████████

█████████████████████████████

58.      In addition, almost immediately after speaking to the Affected Shareholders, on

April 12, 2023, Federated filed a delaying amendment to its Rescission Offer filing. Ex. 26.

59. ███████████████████████████████████████

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

60. ███████████████████████████████████████

███████████████████████████████████████████
███████████████████████████████████████████
█████████████████████████████████████████

61. ███████████████████████████████████████

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
██████████████████████████████████

62. ███████████████████████████████████████

███████████████████████████████████████████
███████████████████████████████████████████

█████████████

## V.    The April 19, 2023 Goodwin Proctor Letter

63.    Meanwhile, on April 19, 2023, Federated Hermes received a letter from Goodwin Proctor, counsel for the Tender Fund's independent trustees, ███████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████

64.    ███████████████████████████████████████

███████████████████

███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
████

███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████

███████████████████████████████████
███████████████████████████████████
███████████████████████████████

███████████████████████████████████
███████████

███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████

██

65.    ███████████████████████████████

66.    Further, as of April 19, 2023, neither Federated Hermes, nor FAS nor the Tender Fund had incurred costs or expenses in excess of $2 million to mitigate any **Loss** arising from FAS' failure to register the Tender Fund securities. Ex. 5, No. 1.

67.    In addition, at that time, none of the Affected Shareholders had asserted any claim or demand against Federated Hermes, FAS, or the Tender Fund. *Id.*, Nos. 50-52.

68.    The next day, on April 20, 2023, Reed Smith forwarded Goodwin Proctor's letter to Endurance and Continental, stating that Federated was now asserting a "**Claim**" under the Endurance Policy's Professional Liability Coverage Part, as the Goodwin Proctor letter triggered "the coverage afforded under Insuring Agreement I.A of [Endurance] Policy's Professional Liability Coverage Part." Ex. 29 at ENDURANCE000002.

69.    On April 25, 2023, Ms. Jacobson wrote to Federated, its counsel and broker with follow-up questions and document requests seeking additional information for Endurance's in investigating the **Claim**. Ex. 30. Those questions and requests were as follows:



7)     How are the $45M in unregistered shares valued, as I
believe only $20M in shares were initially registered?

8)     Can you please explain the $19M plus damage figure in the
Goodwin Letter? On the call, we were told that this is a
result of a calculation based on the rescission price as of
3/31, but if the Fund does not have to be liquidated, what is
the loss to the Fund, if any?

*Id.* at FHI00005093.

70.     Endurance again reserved its rights stating that "all rights continue to be mutually

reserved." *Id.*

71.     The fact that Endurance needed more information regarding Federated's **Claim** to

conduct its investigation and determine coverage was ███████████ to Federated and, indeed,

Federated recognized that ████████████████████████████████

████████████████████ Ex. 6, Tr. of Dep. of M. McArdle at 136:13-25.

72.     Federated responded to Ms. Jacobson's inquiries -- without objection or raising any

complaints that Endurance was seeking immaterial or excessive information  -- on April 27, 2023

in a nine-page letter and forwarded over 200 pages of documents in response to the information

Endurance requested. Ex. 31.

73.     In the meantime, Endurance retained Doug Green, Esquire, of Baker Hostetler, as

securities law counsel.  Ex. 8, Tr. of Dep. of L. Jacobson at 125:18-25.

**VI.    Federated Explores an "Alternative Settlement" with the Affected Shareholders and Related Communications with Endurance**

74.    On May 2, 2023, just days after sending its response to Endurance's inquiries and despite not yet knowing whether the shareholders would elect the Rescission Offer or Alternative Offer, Reed Smith demanded that Endurance either consent to allow Federated to offer the "alternative settlement proposal" and agree to fund any settlement sum related to the Alternative Offer or agree that Federated could take reasonable steps to protect Federated's interests. Ex. 51; Ex. 6, Tr. of Dep. of M. McArdle at 211:3-19.

75.    The next day, Endurance's claims adjuster, Ms. Jacobson, responded that Endurance agreed to waive consent:

> As our review and investigation remain ongoing, in order to allow the Insureds to act in their best interest, [Endurance] agrees to waive lack of consent as a coverage defense to the Insureds' course of action to remedy its failure to register shares (i.e., whether it proceeds with proposal 1 or proposal 2). We continue to reserve all other rights under the Policy, at law and/or in equity.

Ex. 32 at FHI00006752. Continental, on the other hand, did not agree to waive consent.

Ex. 35 at ENDURANCE004374.

76.    As Federated itself has admitted, this was ██████████████ and, in fact, just minutes after Endurance sent its email, Reed Smith responded: ██████████████

████████████████████████████████████████

██████ *Id.*; Ex. 6, Tr. of Dep. of M. McArdle at 211:3-19.

77.    ████████████████████████████████████

████████████████████████

78.    Eight days later, on May 10, 2023, Reed Smith informed Endurance that "SEC staff confirmed yesterday evening that the SEC [would] not object to Federated Hermes pursing the alternative settlement offer . . ." Ex. 35 at ENDURANCE004373.

79. ████████████████████████████████████████████████

████████████████████████████████

80. ████████████████████████████████████████████████

████████████████████████████████████

81. ████████████████████████████████████████████████

██████████████████████████████████████████

82.    Shortly thereafter, Endurance retained Michael Perlis, a partner with Kaufman Borgeest & Ryan, LLP. Ex. 33 at ENDURANCE009827. Reed Smith was notified of Mr. Perlis' retention on May 15, 2023. *Id.*

83. ████████████████████████████████████████████████

██████████████████████████████    ██████████████████████

████████████████████████████████████████████████

███████████████████████

84. ████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████



████████████████████████████████

*Id.* at 121-122.

85.    ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████    Ex. 34; Ex. 7, Tr. of Dep. of S. Van Meter at 121:3-122:24, 127:15-25; 128:11-14.

86.    Mr. Lennox later clarified that Auto-Owners never intended to accept the rescission offer, but simply wanted the registration error remedied:

> Q. Do you remember discussing internally, either with David Pierce or anyone else at Auto-Owners, the pros and cons of accepting the rescission offer?
> A. Directly, we were – frankly, we weren't really interested in the rescission offer.
> Q. And why was that?
> A. Because we wanted to stay invested in the Tender Fund.
> Q. Was that communicated to Federated?
> A. Yes, it was.

Ex. 11, Tr. of Dep. of M. Lennox Dep. 32:15-33:2.

87.    ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████

88.    ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████

89.    As Mr. Kane explained, MCCA was happy to stay invested in the Tender Fund but

was not going to turn down ████████ and ██████████████████ Ex. 10, Tr. of Dep. of

S. Kane at 39: 5-10; 43:10-44:7.

90.    ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████

91.    Federated shared the written demands from the Affected Shareholders with

Endurance on May 15, 2023.  Ex. 33 and 34.

92.    The Affected Shareholders have never made any Claims and have never asserted

that any Tender Fund prospectus contained misrepresentations regarding the registration of

Covered Shares. Ex. 5, Nos. 36-41, 59-61.

**VII.    FAS Pays the Affected Shareholders $17,898,929.67**

93.    ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████

94.    ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████

95. ████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

96. ████████████████████████████████████████████

███████████████████████████

97. ████████████████████████████████████████████

████████████████████████████

98. ████████████████████████████████████████████

████████████████████████████████████████████████

██

99. ████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

100. ████████████████████████████████████████████

████

101.    Also on May 19, 2023, FAS, on behalf of the Tender Fund, filed a new N-2 Registration Statement to register the unregistered shares. Ex. 45.

102. ████████████████████████████████████████████

██████████████████

103.    To date, the SEC has not issued a "no action" or "closing" letter in connection with the Administrative Error. Ex. 5, Nos. 24-25.

## VIII.  Federated's Demand for Reimbursement and Endurance's Response

104.    On May 23, 2023, Reed Smith asserted that the shareholders' demands triggered the Endurance Policy's Professional Liability Coverage Part and demanded that Endurance and

Continental reimburse "losses" incurred in connection with the settlement agreements and advised it was also "seeking reimbursement for the costs, charges, fees, and expenses incurred by the Tender Fund and Federated Hermes in connection with he Unregistered Shares Matter to the extent those costs, charges, fees and expenses exceed the retention. The Insureds will promptly send Endurance copies of the invoices after receiving them and confirming the amounts." Ex. 46 at FHI00001939.

105.    No such invoices were forwarded to Endurance.

106.    Three weeks later, in a June 12, 2023 response letter, Endurance's coverage counsel, Michael Perlis, stated Endurance's initial coverage conclusions. Ex. 47.

107.    The June 12th letter stated that the principal issue was "whether the settlement amounts fully constitute covered **Loss** as defined under the Policy." *Id.*

108.    Although Endurance informed Federated that it did not believe the $17.9 million Federated paid to the Affected Shareholders constituted covered **Loss** but instead constituted a "business accommodation", Endurance advised that it was "prepared to pay the reasonable costs incurred" to correct FAS's administrative error, as well as "reasonable **Defense Costs**" above the applicable retention. *Id.*

109.    Further, Endurance agreed to schedule a time to have a "real-time discussion" with Federated regarding its coverage conclusion and offered to travel to Federated's Pittsburgh office on July 11, 2023 for an in-person meeting. *Id.*; Ex. 48.

110.    Federated, however, decided that it would rather litigate the coverage issue than participate in the discussion. Ex. 49; Ex. 6, Tr. of Dep. of M. McArdle at 214:2-216:8.

111.    On June 30, 2023, Federated responded to Endurance's June 12, 2023 letter forwarding a draft of the coverage complaint it ultimately filed in this Court asserting the following

counts: (1) breach of contract; (2) declaratory judgment; (3) breach of the implied duty of good faith and fair dealing (against Endurance); and (4) bad faith insurance practices pursuant to 42 Pa.C.S. § 8371 (against Endurance). Ex. 49.

<div style="margin-left:40%">

HANGLEY ARONCHICK SEGAL PUDLIN
& SCHILLER

</div>

Dated:  October 17, 2025        By:  */s/ Ronald P. Schiller*
                                     Ronald P. Schiller
                                     Michael R. Carlson (*pro hac vice*)
                                     Lily K. Huffman (*pro hac vice*)
                                     Christopher J. Mauro (*pro hac vice*)
                                     One Logan Square, 27th Floor
                                     Philadelphia, PA 19103
                                     (215) 568-6200
                                     rschiller@hangley.com
                                     mcarlson@hangley.com
                                     lhuffman@hangley.com
                                     cmauro@hangley.com

                                     *Attorneys for Defendant Endurance American Insurance Company*